UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MARK MORCUS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-229-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MEDI-COPY SERVICES, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants' Medi-Copy Services, Inc. and Menika Bobo's Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment. [Record No. 13] The defendants' motion will be granted, in part, and denied, in part.

## I.

Plaintiff Mark Morcus was insured through his employer under policies with The Guardian Life Insurance Company of America ("Guardian") for short and long-term disability. [Record No. 1-1, p. 4 ¶ 12] He became unable to work in August 2015 due to medical conditions and initiated a short-term disability claim with Guardian. *Id.* at p. 4 ¶¶ 13, 16. Guardian approved the claim and Morcus began receiving short-term disability benefits. *Id.* at p. 5 ¶ 19. Following expiration of the short-term disability period, Morcus submitted a claim for long-term disability benefits, which Guardian approved on February 8, 2016. *Id.* at p. 5 ¶¶ 19-23. He received monthly payments from Guardian, during which time he received medical treatment from Dr. Joshua Bailey at Lexington Clinic. *Id.* at p. 6 ¶¶ 25, 27.

Medi-Copy is a health information exchange that provides services to Lexington Clinic, which include medical record request processing. *Id.* at p. 4, ¶¶ 7-9. Medi-Copy sent a 15-page fax to Guardian on August 31, 2016, which contained medical records and three forms purporting to contain information regarding Morcus' claim for benefits. *Id.* at p. 6 ¶¶ 33-34. The first form indicated (erroneously) that Morcus had "no restrictions" and was able to return to work. *Id.* at p. 7 ¶ 39. The form was completed and signed by Medi-Copy's agent, Menika Bobo, without Dr. Bailey's approval. [1] *Id.* at p. 7 ¶¶ 40-42. The second form also was signed by Bobo without Dr. Bailey's consent and incorrectly stated that Morcus was capable of performing sedentary or light work on a full-time basis. *Id.* at p. 7 ¶¶ 43-46. Bobo also completed and signed the third form without Dr. Bailey's consent and incorrectly indicated that Morcus was capable of performing heavy work on a full-time basis. *Id.* at p. 8 ¶¶ 51-54.

Bobo continued to seek clarification from Dr. Bailey regarding Morcus' physical limitations in the days that followed. *Id.* at p. 9-10 ¶¶ 65-67. Dr. Bailey sent a message to Medi-Copy on September 12, 2016, indicating that Morcus should avoid heavy lifting and significant lumbar twisting maneuvers. Bailey clarified that these were Family Medical Leave Act restrictions, as opposed to a disability assessment. *Id*. at p. 10 ¶¶ 66-68. Bobo faxed the same three forms to Guardian the following day, which included revisions reflecting Dr. Bailey's comments from September 12, 2016, and indicated that Morcus was able to return to work. *Id.* at p. 11-13 ¶¶ 69-94.

---

[1] Under the signature line on each form, Bobo signed "*Joshua Bailey/Menika Bobo*."

Guardian terminated Morcus' long-term disability benefits on September 8, 2016, citing items provided by Medi-Copy on August 31, 2016. [2] *Id.* at p. 8 ¶¶ 58, 59. Lexington Clinic's Health Information Manager, Sharon Brown, issued a letter on September 23, 2016, stating that the information submitted by Medi-Copy on August 31 was not accurate and that Medi-Copy notified Guardian accordingly on September 14, 2016. *Id.* at p. 48. Morcus alleges that Medi-Copy did not notify Guardian regarding the inaccuracy of the forms, nor did it retract them. *Id.* at p. 9 ¶ 64.

Morcus retained an attorney and filed an administrative appeal regarding the denial of benefits. *Id.* at p. 13 ¶ 99. Guardian informed Morcus on March 14, 2017, that it had reversed its decision to terminate benefits. He subsequently filed this action against Medi-Copy and Bobo alleging that their actions prevented him from receiving long-term disability benefits from September 8, 2016, through March 14, 2017. Morcus does not seek lost long-term disability benefits but, instead, he seeks damages incurred in pursuing an appeal to recover those benefits. Additionally, he complains that he suffered emotional and financial distress, worry, and inconvenience as a result of the defendants' actions. *Id.* at p. 14 ¶ 102-03. Morcus asserts various claims under Kentucky state law including violations of the Consumer Protection Act; fraudulent and negligent misrepresentation; fraud by omission; interference with contractual relations; negligence and gross negligence; negligent hiring, training, supervision, and retention; and intentional and negligent infliction of emotional distress; and negligence *per se.*

---

[2] Guardian maintained its denial of LTD benefits after receiving the September 13, 2016 forms from Medi-Copy. [Record No. 1-1, p. 13 ¶ 95]

## II.

The defendants have moved for judgment on the pleadings or, in the alternative, for summary judgment. Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions made under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). To survive a motion to dismiss, a plaintiff must allege sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Peatross v. City of Memphis*, 818 F.3d 233, 239-40 (6th Cir. 2016). A party's Rule 12(c) motion is properly granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). The Court accepts as true "all well-pleaded material allegations," but "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In making its determination on the motion for summary

judgment, the Court will view all the facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

III.

The defendants' motion is based largely on the argument that Morcus' claims are completely preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* ERISA provides a uniform regulatory regime over employee benefit plans and includes expansive preemption provisions intended to ensure that employee benefit plan regulation is "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). There is no dispute that Morcus' employer-sponsored disability plan is governed by ERISA. However, ERISA does not preempt every state-law claim that touches the Act in some tangential way.

The Supreme Court examined the scope of § 502's preemptive force in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004), declaring that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." The Court concluded that "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id.*

ERISA § 502(a)(1)(B), codified at § 1132(a), provides:

A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

The Court articulated a two-part test to determine whether state-law claims fall within the scope of this definition. A claim falls into the category of claims that is completely preempted when both of the following are satisfied: "(1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) the plaintiff does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms.'" *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 615 (quoting *Davila*, 542 U.S. at 210).

The Sixth Circuit recently examined ERISA's preemption of state-law claims against third-party medical reviewers. Violet Hogan filed an ERISA lawsuit in federal court alleging the improper denial of disability benefits. *See Hogan v. Life Ins. Co. of N. Am.* ("*Hogan I*"), 521 F. App'x 410 (6th Cir. 2013). Following an adverse ruling in *Hogan I*, Hogan sued two nurses who worked for Life Insurance Company of North America and who had provided opinions regarding Hogan's eligibility for disability benefits under an ERISA plan. *Hogan v. Jacobson*, 823 F.3d 872 (6th Cir. 2016). Hogan's complaint made no reference to ERISA or the Life Insurance Company of North America and alleged only that the nurses had committed negligence *per se* by giving medical advice without being licensed under Kentucky state law. *Id.*

Hogan argued that her claim was not preempted because the nurses were not plan administrators and thus were not proper defendants to a § 1132 claim. The Court explained that a plaintiff may not evade complete preemption merely by suing the wrong party. *Id.* at 880. Determining whether a cause of action falls within § 1132(a)(1)(B) requires the Court to examine the complaint, the state laws upon which the plaintiff's claims are based, and, when necessary, the various plan documents. *Id.* (citing *Davila*, 542 U.S. at 211). Claims likely fall

within the scope of § 1132 when "the only action complained of" is the refusal to provide benefits under an ERISA plan and "the only relationship" between the parties is based in the plan. *Id.* (quoting *Davila*, 542 U.S. at 211).

The Court emphasized that Hogan's relationship with the defendants was based solely on the existence of Hogan's ERISA plan. "[C]laims purporting to challenge the actions of medical providers are nonetheless claims for ERISA benefits when the medical determinations were made solely in the course of an ERISA-benefits determination and the damages alleged arise from the denial of benefits." *Id.* at 880 (citing *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 417 (9th Cir. 1990) (claims of fraud against a claim-processing company and doctors were preempted because the "complaint alleges violations of duties created by the administration of the disability benefit plan" and "[t]here would be no relationship or cause of action . . . without the plan"). Further, in addressing the first *Davila* factor, the Court explained that Hogan's alleged damages arose from the ultimate denial of disability benefits. *Id.* at 881.

With respect to the second part of the *Davila* test, the Court looked to the origin of the parties' relationship. "Whether a duty is 'independent' of an ERISA plan does not depend merely on whether the duty nominally arises from a source other than the plan's terms." *Id.* (quoting *Gardner*, 715 F.3d at 613). Instead, courts must determine whether the defendant's duty arose "solely because of and within the context of the benefits review required by the plan." *Id.* at 882. The Sixth Circuit compared Hogan's claim to "truly independent" state-law tort claims and determined that the defendant nurses had no legal duty independent of ERISA. *Id.* at 882-83 (citing *Gardner*, 715 F.3d at 614-15) (claim for tortious interference with a contract against company executives and investor who allegedly induced company to cancel an executive retirement plan in connection with sale of investor's share); *Dishman v. UNUM*

*Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001) (claim that insurance agency was liable for tortious invasion of privacy in connection with actions of investigators tasked with uncovering information regarding plaintiff's alleged return to other work).

The Sixth Circuit expanded this holding in *Milby v. MCMC LLC*, 844 F.3d 605 (6th Cir. 2016). Milby was covered by a long-term disability insurance policy through her employer. She became unable to work in April 2011 and received disability benefits for approximately seventeen months. *Id.* at 608. As part of an eligibility review, her ERISA plan engaged MCMC, a third-party reviewer, to provide an opinion regarding Milby's work restrictions. MCMC and its agent, Jamie Lewis, opined that Milby was able to return to work. The plan terminated Milby's benefits based, in part, on MCMC's recommendation.

Milby filed an ERISA suit against her disability provider and a separate state-court action alleging negligence *per se* against MCMC for practicing medicine in Kentucky without a license. The court noted that "[b]ecause a third-party reviewer is not acting as the plan administrator nor making the benefits determination . . . the type of claim here may edge toward the category of those not preempted." *Milby*, 844 F.3d at 611. However, *Hogan* determined the outcome for the first prong of the *Davila* test because MCM's conduct was "indisputably part of the process used to assess a participant's claim for a benefit payment under the plan, making [the state-law claim] an alternative enforcement mechanism to ERISA's civil enforcement provisions." *Id.* (quoting *Hogan*, 823 F.3d at 880) (internal citation omitted)). Further, Milby's claim arose from the denial of benefits under an ERISA plan, satisfying the first prong of the *Davila* test.

Turning to the second prong of the *Davila* test, the *Milby* Court considered whether the plaintiff had alleged the violation of an independent legal duty. "A state-law tort is

independent of ERISA when the duty conferred was not derived from, or conditioned upon, the terms of the plan and there is no 'need[] to interpret the plan to determine whether that duty exists." 844 F.3d at 611 (internal quotation marks and citation omitted). An independent duty may exist even when an ERISA plan is the basis for the relationship between the parties. Ultimately, the inquiry is case-specific and requires examination of the complaint, the state law on which the claims are based and, when necessary, the various plan documents. *Id.* at 611-12 (citing *Davila*, 542 U.S. at 211).

The court looked to Kentucky law to determine whether the defendants had an independent duty to Milby under Ky. Rev. Stat. § 311.560, which prohibits the practice of medicine without a license. Since the defendants had only reviewed Milby's medical records and had not diagnosed or treated any medical condition, the court determined that they had not practiced medicine within the meaning of the statute. *Id.* at 612. Accordingly, Milby implicitly relied on ERISA to establish the duty required for her negligence claim, thus satisfying the second prong of *Davila*.

Morcus asserts a host of state-law claims including violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq.*; fraudulent and negligent misrepresentation; negligence; interference with contractual relations; negligent hiring, training, supervision, and retention; intentional infliction of emotional distress; and negligence *per se* based on a violation of Ky. Rev. Stat. § 516.040, which prohibits forgery. [3] Determining whether a state-law claim is preempted is not always simple. *Milby*, 844 F.3d at 609. Unlike the statute at

_____

[3] The Court previously opined that Morcus' negligence *per se* claim was completely preempted and that subject matter jurisdiction exists under 28 U.S.C. § 1331. [Record No. 145] The defendants recently filed an Amended Notice of Removal establishing that subject matter jurisdiction also exists under 28 U.S.C. § 1332. [Record No. 41]

issue in *Hogan* and *Milby*, it does not appear that the Sixth Circuit has addressed these precise types of claims in a similar context. However, it has cited relevant district court cases with approval and provided other guidance which leads to the conclusion that these claims are not subject to complete preemption.

The *Milby* Court's apparent approval of *Byars v. Greenway*, No. 14-1181, 2014 WL 7335694 (W.D. Tenn. Dec. 19, 2014) is instructive. Byars alleged that Greenway, acting as the agent of her deceased husband's former employer, improperly notarized a life annuity form, which prevented her from receiving distributions from her husband's retirement plan. *Byars*, 2014 WL 7335694 at *1. Byars sued Greenway and the former employer alleging negligent, intentional, malicious, fraudulent, and reckless activity in the connection with the defendants' actions. She sought punitive damages but did not seek to be reinstated as a beneficiary under the plan. *Id.* The defendants argued that the claims were completely preempted by ERISA.

The court applied the *Davila* test and determined that Byars' claims were not preempted. *Id.* at *4-5. The court found it particularly persuasive that Byars did not seek to be reinstated as a beneficiary nor did she seek payment of previously accrued benefits out of plan funds. *Id.* at *4. Instead, she sought monetary damages from Greenway for alleged negligence in the notarization and from her employer under agency principles. *Id.* Further, Greenway was not a plan fiduciary or administrator and the claims could not have been brought under ERISA. *Id.* at *5.

To determine whether a claim satisfies the first prong of the *Davila* test, the Court must look beyond the label the defendant has placed on the claim and determine whether, in essence, the claim is for the recovery of an ERISA benefit plan. *Milby*, 844 F.3d at 610. The opinions

in *Hogan* and *Milby* assumed, without discussion, that the plaintiffs sought to recover benefits due under the terms of the applicable ERISA plan. This is a logical assumption because the plaintiffs in those cases were unsuccessful when they brought § 502 actions against the plan. Like the plaintiff in *Byars*, however, Morcus has explicitly stated that he does not seek payment of benefits under an ERISA plan. According to his Complaint, the Plan already determined that he was entitled to benefits for the period in question. Instead, he seeks damages suffered as a result of a temporary deprivation of benefits, caused by the defendants' alleged actions.

The Sixth Circuit suggested that a case edges toward the line of non-preemption when the defendant is a third party that is not acting as the plan administrator and is not making the benefits determination. *Milby*, 844 F.3d at 611. This consideration is even stronger in the case at hand because Lexington Clinic retained Medi-Copy to process disability claims. In other words, Guardian, Morcus' disability carrier, had no connection to the defendants other than as a passive recipient of information. Accordingly, the first *Davila* factor is satisfied.

Although both *Davila* factors must be present to establish complete preemption, the Court notes Morcus has sufficiently alleged the violation of independent legal duties with respect to his remaining claims. It is well established that an independent duty may exist even when an ERISA plan is the basis for the relationship between the parties. *Milby*, 844 F.3d at 611 (citing *Gardner*, 715 F.3d at 615). For example, he alleges that he is within the scope of individuals intended to be protected by Kentucky's Consumer Protection Act and that he was harmed by defendants' alleged breach of the act. [Record No. 1-1, pp. 14-15] Morcus' negligence and misrepresentation claims are a closer call, since they involve activity that is alleged to have occurred in the context of the defendants' processing of Morcus' disability claims. However, the defendants and their alleged conduct are removed from Guardian and

its administration of the Plan. Even plan fiduciaries are not provided "blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Penny/Ohlmann/Niemann, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 699 (6th Cir. 2005) (quoting *Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 984 (9th Cir. 2001). It stands to reason that, under the foregoing circumstances, Morcus' remaining state-law claims are not completely preempted by ERISA.

## IV.

The defendants alternatively argue that Morcus' claims are expressly preempted by ERISA. Unlike complete preemption, express preemption under 29 U.S.C. § 1144(a) does not create a federal cause of action but, instead, is a traditional preemption defense. The express preemption clause provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 1144(a). This preemption provision is broad and a state law may be preempted "even if the law is not specifically designed to affect [ERISA] plans, or the effect is only indirect." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007) (*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Nevertheless, some state laws might affect ERISA-governed plans in a way that is "too tenuous, remote, or peripheral" to say that they "relate to" the plan. *Id.* (citations omitted).

In deciding whether a state-law claim is too remote to be preempted by ERISA, the Sixth Circuit has focused on whether the remedy sought by the plaintiff is "primarily plan-related." *Id.* When the plaintiff's claims could be viewed as an "alternate enforcement mechanism," courts must examine whether resolution of claims "necessarily require[] evaluation of the plan and the parties' performance pursuant to it." *Id.* at 862. If it does, it is preempted. On the other hand, when the requested remedy refers to the plan "only for the

purpose of defining 'specific, ascertainable damages,'" the claims are not preempted. *Id.* The court stressed that "Congress did not intend . . . for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *Id.* (quoting *Penny/Ohlmann/Nieman, Inc.*, 399 F.3d at 698).

Viewed against this backdrop, it is clear that the plaintiff's claims do not "relate to" an ERISA plan within the meaning of § 1144(a). For the reasons already explained, it cannot be said that the damages sought are "primarily plan-related." The defendants argue that resolution of Morcus' claims may involve interpretation of Plan documents, but that is far from clear. It can hardly be said that resolution of Morcus' claim "necessarily" requires interpretation of Plan documents, much less the parties' performance pursuant to the Plan, since there is no suggestion that the defendants had any obligation under the Plan. The plaintiff alleges (and has provided supporting documentation) indicating that the Plan terminated benefits in reliance on information provided by the defendants. In turn, he alleges that his benefits were restored when Guardian learned that the information was incorrect. [Record No. 1-1, p. 66] Accordingly, the plaintiff's claims are not sufficiently related to ERISA to invoke the Act's express preemption clause.

## V.

The defendants contend that, to the extent Morcus' claims are not preempted by ERISA, he has not alleged facts showing that he is entitled to relief. The Court will address each claim in turn. [4]

---

[4] The defendants did not address Morcus' claims for negligence and gross negligence (count 6), so they are not included in this analysis.

## A.     Kentucky Consumer Protection Act ("KCPA")

The KCPA prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. § 367.170(1).  Morcus claims the defendants' actions, including their alleged provision of false information about his ability to work, constituted violations of the Act.  He claims that he purchased copies of medical records and forms from Medi-Copy.  [Record No. 1-1, p. 14 ¶ 108]

To maintain an action alleging a violation of the KCPA, an individual must fit within the protected class of persons defined in Ky. Rev. Stat. § 367.220.  *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992).  That provision provides, in pertinent part, as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person or a method, act or practice declared unlawful by [Ky. Rev. Stat. § 367.170], may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business . . .

Under Kentucky law, privity of contract is required to maintain an action under the KCPA.  *Id.* 909-10 ("A subsequent purchaser may not maintain an action against a seller with whom he did not deal . . . .")

The defendants provided the declaration of Elliot Holt, Chief Executive Officer of Medi-Copy, in support of their motion.  [Record No. 13-2]  Holt stated on August 4, 2017, that Guardian paid Medi-Copy for providing medical information about Morcus, but that Morcus did not purchase copies of medical records or forms from Medi-Copy himself.  *Id.*  In response, Morcus relies on his Complaint in which he alleges that he did purchase records from Medi-

Copy. He contends that his allegations satisfy the privity requirement "at the motion to dismiss stage" and thus the defendants' motion should be denied.

Morcus fails to acknowledge that the defendants alternatively moved for summary judgment. Accordingly, it is proper for the Court to consider Holt's declaration. While some discovery must be afforded the non-movant before summary judgment is granted, *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994), Morcus does not claim that he had inadequate time to conduct discovery regarding this topic. He easily could have filed his own affidavit stating that he did, in fact, purchase the relevant items directly from the defendants, satisfying the privity requirement under the KCPA. Because he did not, the Court assumes he cannot meet his burden of proof regarding this element and summary judgment will be granted in favor of the defendants.

## B. Fraudulent and Negligent Misrepresentation; Fraud by Omission

Morcus' misrepresentation and omission claims are based on his allegations that the defendants provided inaccurate information to Guardian, resulting in termination of his disability benefits. Kentucky law recognizes six elements for the tort of fraudulent misrepresentation:

> (1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention of inducing plaintiff to act, or that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff thereby suffered injury.

*Clark v. Danek Med., Inc.*, 64 F.Supp.2d 652, 655 (W.D. Ky. 1999) (quoting *Crescent Grocery Co. v. Vick*, 240 S.W. 388, 389 (Ky. 1922)). The defendants contend that the claim should be dismissed because there is no allegation that the defendants made a material representation *to*

*the plaintiff* with the intention of inducing the plaintiff to act or that the plaintiff acted in reliance on any such representation.

Morcus relies on Restatement (Second) of Torts (1977) § 533 and *Kentucky Laborers Dist. Council v. Hill*, 24 F.Supp.2d 755, 771 (W.D. Ky. 1998), in which the court remarked that "Kentucky courts have long held that a third party not the target of an alleged tortfeasor's deceptions may state a claim for deceit so long as it was reasonably foreseeable that he would receive and potentially act on them." This is consistent with Restatement § 533, which provides the example of misrepresentations made to credit-rating companies for the purpose of obtaining a credit rating. In this case, the maker of the misrepresentation may be liable to any person who extends credit in reliance upon the erroneous rating. This example hold true to the elements stated above, as it requires the plaintiff to have acted in reliance on the misrepresentations. Such an allegation is lacking in Morcus' claim and therefore it is subject to dismissal.

Negligent misrepresentation and fraud by omission have similar reliance requirements. *See Presnell Constr. Managers, Inc. v. EH Constr.*, 134 S.W.3d 575 (Ky. 2004). Kentucky has adopted Restatement (Second) of Torts § 522 which provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them *by their* justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell Constr. Managers, Inc.*, 134 S.W. at 580 (quoting Restatement (Second) of Torts § 522 (1977) (emphasis added)). Comments to the Restatement provide that when the misrepresentation is merely negligent and results in a pecuniary loss, the scope of liability is

limited only to those persons for whose guidance the maker knows the information to be supplied, and to them only for loss incurred in the kind of transaction in which it is expected to influence them. Restatement (Second) of Torts § 522, cmt. i.

Fraud by omission requires proof of four elements: (1) that the defendant had a duty to disclose a material fact; (2) that the defendant failed to disclose the fact; (3) that the defendant's failure to disclose induced *the plaintiff* to act; and (4) that the plaintiff suffered actual damages." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003) (emphasis added). Morcus has not identified any authority which would allow him to pursue relief under these theories without alleging that he acted in reliance on the defendant's misrepresentations or omissions. Accordingly, the claims for fraudulent and negligent misrepresentation and for fraud by omission will be dismissed.

### C. Interference with Contractual Relations

Morcus alleges that the defendants' actions amounted to intentional interference with his contract for long-term disability benefits with Guardian. To recover for a claim of intentional interference with contractual relations, a plaintiff must establish the following elements: (1) the existence of a contract; (2) the defendants' knowledge of a contract; (3) that the defendants' intended to cause a breach; (4) the defendants' conduct caused a breach; (5) the breach resulted in damages to the plaintiff; and (6) the defendants had no privilege or justification to excuse their conduct. *EPPS Chevrolet Co. v. Nissan N.A., Inc.*, 99 F.Supp.3d 692 (E.D. Ky. 2015) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D. Ky. 1995)).

Defendants argue that Morcus has not alleged that a breach of contract occurred because Guardian simply terminated benefits according to the terms of the Plan. Morcus was

allowed to appeal and his benefits were eventually reinstated. Morcus did not respond to this portion of the Defendants' argument. Instead, he has focused on rebutting their suggestion that he had not established the requisite intent for a finding of tortious interference with contractual relations. [Record No. 22, p. 26]

The Court agrees that Morcus has not alleged that Guardian breached its contract with him. Morcus alleges that Guardian approved his long-term disability claim and paid benefits to him until it received medical information indicating that he could return to work. Morcus was informed of his right to appeal, which he pursued successfully. Guardian's subsequent determination that Morcus had not, in fact, been able to work as of August 26, 2016, does not constitute a breach of contract. Because Morcus has not alleged facts indicating that a breach of contract occurred, this claim will be dismissed.

### D.        Negligent Hiring, Training, Supervision, and Retention

Morcus alleges that Medi-Copy breached its duty to ensure that its employees, including Bobo, were properly hired, trained, supervised, and retained for business activities so that they did not cause harm to others. [Record No. 1-1, pp. 21-22] Under Kentucky law, the two elements of negligent hiring and retention are that "the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalkbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000). The defendant contends that the Complaint consists of "bare conclusions" and includes "no information whatsoever about Bobo's work history or any past acts of negligence." However, the Complaint does indicate that Bobo disseminated two sets of false medical records over a two-week period and did not retract them, despite Lexington Clinic's directive to do so. [Record No. 1-1, pp. 6-9]

It is early in discovery and the plaintiff does not necessarily have access to the type of information to which the defendants allude. He contends that these items are the subject of ongoing discovery. Accordingly, the defendants' motion to dismiss these claims will be denied.

### E.    Intentional and Negligent Infliction of Emotional Distress

Morcus alleges that he has suffered "serious stress" and "emotional distress" as a result of the defendants' conduct. Plaintiffs seeking damages for intentional infliction of emotional distress must demonstrate that the wrongdoer's conduct was intentional or reckless; the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality; a causal connection between the wrongdoer's conduct and the emotional distress; and the emotional distress must be severe. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996). The law in Kentucky is restrictive in defining what constitutes outrageous conduct. It is clear that the defendants' alleged conduct here comes nowhere close to extreme and outrageous. *See Humana v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (a nurse shouting "shut up" at a woman who was delivering her stillborn child, unassisted, into a bedpan did not constitute outrageous conduct).

To establish a claim of negligent infliction of emotional distress, plaintiffs must allege the recognized elements of a common law negligence claim, as well as "severe" or "serious" emotional injury. *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). "A 'serious' or 'severe' emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* The Court considers factors such as the intensity of the harm, the duration of the harm, and the character of nature of the defendant's conduct. *Id.* at 17 n. 59 (citing Restatement (Second)

Torts § 46 (1977)).  The defendant has not alleged any facts to suggest that his emotional harm was severe or serious.  Accordingly, the plaintiff's claims for intentional and negligent infliction of emotional distress will be dismissed.

## F.     Negligence *Per Se* (Forgery)

The defendants agree that Morcus may state a claim for forgery, Ky. Rev. Stat. § 516.040, by alleging that the defendants falsely made, completed, or altered a written instrument, with the intent to defraud, deceive, or injure.  [Record No. 13-1, p. 26]  They contend that Morcus' Complaint shows that Defendant Bobo did not have the requisite intent to commit forgery and, instead, was trying to *help* Morcus with his disability claim.  However, Morcus has raised factual issues regarding Bobo's actual intent.  Specifically, Morcus alleges that Bobo knowingly signed Dr. Bailey's name and submitted the forms containing inaccurate information on two occasions.  It is unclear what Bobo was thinking when she allegedly submitted the forms in this manner.  Accordingly, the defendants' motion to dismiss the forgery claim will be denied.

## G.     Negligence *Per Se* (Practice of Medicine without a License)

The Court previously determined that the plaintiff's claim of negligence *per se* based on Ky. Rev. Stat. § 311.560 was completely preempted by ERISA.  Even if it were not, Morcus has not stated a claim for violation of this provision.  The practice of medicine is defined as "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any and all means, methods, devices, or instrumentalities."  Ky. Rev. Stat. § 311.550(10).  Morcus has not alleged any conduct on the part of the defendants which would fall within this definition.  *See Milby*, 844 F.3d at 612.

# VI.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      The defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment [Record No. 13] is **GRANTED** in part, and **DENIED**, in part.

2.      Summary judgment is granted in favor of the defendants with respect to the plaintiff's claim for violation of the Kentucky Consumer Protection Act.

3.      The plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, fraud by omission, interference with contractual relations, intentional and negligent emotional distress, and negligence *per se* for practice of medicine without a license in violation of Ky. Rev. Stat. § 311.560 are **DISMISSED**, with prejudice.

4.      The defendant's claims for negligence and gross negligence (count 6); negligent hiring, training, supervision, and retention (count 8); and negligence *per se* for forgery in violation of 516.040 (count 7) remain pending.

This 28th day of November, 2017.



Signed By:

*Danny C. Reeves*

United States District Judge